**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CINCINATTI , OHIO**

**YUSUF BROWN-AUSTIN,**
**C/O THE LAW OFFICE OF ERIC ALLEN, LTD**
**4200 Regent, Suite 200**
**Columbus, Ohio 43219**

**Plaintiff,**

**Case Number**

**Judge**

**Magistrate**

**v.**

**ANNETTE CHAMBERS-SMITH**
**DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS**
**IN HER INDIVIDUAL AND PROFESSIONAL CAPACITY**
**4545 Fisher Road, Suite D,**
**Columbus, OH 43228**

**AND**

**DOUG FENDER, WARDEN OF NORTHEASTERN CORRECTIONAL**
**IN HIS PERSONAL AND PROFESSIONAL CAPACITY**
**2240 Hubbard Rd**
**Youngstown, OH 44505**

**AND**

**DEPUTY WARDEN**
**2240 Hubbard**
**Youngstown, Oh 44505**

**AND**

**UNIT MANAGER DOUGLASS**
**IN HER PERSONAL AND PROFESSIONAL CAPACITY**
**2240 Hubbard**
**Youngstown, Ohio 44505**

**AND**

**ASSISTANT INVESTIGATOR WYMAN**
**IN HIS PERSONAL AND PROFESSIONAL CAPCAITY**
**2240 Hubbard**
**Youngstown, Ohio 44505**

**AND**

**CORE CIVIC CORPORATION**
**5501 Virginia Way, Suite 110**
**Brentwood, TN 37027**

**Defendants,**

---

**VERIFIED COMPLAINT FOR RELIEF UNDER 42 U.S.C. 1983**

**TRIAL BY JURY DEMANDED**

---

## INTRODUCTION

1. Plaintiff Yusuf Brown-Austin is an individual who is incarcerated for a series of crimes, including murder, for Stark County, Ohio. He is a gang member and belongs to the Crips. This affiliation affords him protection from other violent gang members and brutal correctional institution staff. He is bringing this suit to cast light on this barbaric practice of CORE CIVIC and the Ohio Department of Rehabilitation and Corrections.

2. Plaintiff was sent to Northeastern Ohio Correctional Center (hereinafter NEOCC) in 2017. This was operated by Defendant CORE CIVIC.

3. CORE CIVIC is a for-profit corporation headquartered in Tennessee with net profits last year of 1.85 Billion. It has been the target of numerous lawsuits claiming that understaffing is a constant problem. A report by the comptroller of Tennessee found that CORE frequently understaffs its prisons to maximize its profits. ODRC is aware of this fact yet continues to contract with CORE CIVIC. At NEOCC there were frequently less than **5** guards to regulate 900 prisoners.

4. During this time, Defendant CORE had not sufficiently staffed this institution. There were not enough guards to control and regulate the prisoners. This was an attempt to maximize profits and reduce costs. Plaintiff was approached by the Deputy Warden as well as other high-ranking gang members at the prison in 2017. Deputy warden promised the gang leaders free reign of the prison if they would regulate the prisoners. These gangs were charged with keeping the peace in the institution. This allowed the warden and ultimately CORE to maximize profits by understaffing the prison. This regulation included carrying out discipline and deciding who gets what jobs. It also included being directed by staff to carry out beatings and to enforce prison rules.

5. In June 2022, a gun was brought in as contraband and delivered to another gang. Defendant Wyman requested that Plaintiff go to the gang members and get the gun back. Plaintiff, not wanting to be killed, refused. He was then thrown into solitary confinement. He was released from solitary on July 29, 2022, and rode out to Ohio State Penitentiary.

## JURISDICTION

6. This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1343. This action arises under 18 U.S.C. § 1601.

## VENUE

7. Venue in this Court is proper under 28 U.S.C. § 1391 and this court has personal jurisdiction over the defendants sued in their personal capacities in this matter because the events giving rise to this claim occurred in this district.

## PARTIES

8. Plaintiff is a resident of Ohio and lives within the Western Division of the Southern District of Ohio. He is incarcerated for convictions from Stark County, Ohio.

9. Defendant Smith is the Director of the Ohio Department of Corrections and Rehabilitation (hereinafter ODRC). She oversees all matters involving ODRC. She is being sued in her personal and professional capacity. She is responsible for making contracts with outside agencies and corporations for the benefit of ODRC.

10. Defendant Bender is the Warden at NEOCC in Youngstown, Ohio. He is responsible for the day-to-day operations of the prison.

11. Defendant Deputy Warden works at the NEOCC in Youngstown, Ohio. He is responsible for carrying out the orders of Defendant Bender.

12. Defendant Chief of security works at NEOCC in Youngstown, Ohio. He is responsible for the general safety of the prison.

13. Defendant Wyman was always relevant to this complaint an investigator at NEOCC

14. Defendant CORE CIVIC is a Tennessee Corporation with main offices in Brentwood, TN. It is a multi-national corporation that runs private prisons throughout North America. It has conducted business in Ohio and signed a contract to run NEOCC.

## ALLEGATIONS OF FACT

**15.** Plaintiff was convicted in Stark County and entrusted to the Ohio Department of Rehabilitation and Corrections to serve his sentence. The Ohio Department of Rehabilitation and Corrections contracted with Defendant CORECIVIC to run NEOCC. This relationship dated back to 1997 when the prison was opened. The

prison had three separate populations, state prisoners, federal prisoners, and female prisoners.

**16.** Plaintiff was transferred to NEOCC in 2017. After about five to seven months of being there was a meeting with then warden Larsose, Assistant Warden Hurst and Chief of Security Vintell. Also present at that meeting was the Plaintiff and four to five other inmates considered to be gang leaders. The gangs that were in this prison are the Heartless Felons, the Crips, and the Gangster Disciples. The warden, assistant warden and Chief of security indicated that if the inmates present helped to control the inmate population by keeping violence down, they would allow the gangs to control the prison. The staff indicated they needed to keep the level of violence near the amount they reported to the Ohio Department of Corrections to keep the contract. This arrangement was kept in place even with a change in leadership. Each new warden and assistant warden would reiterate this arrangement with the Plaintiff and other gang members.

**17.** NEOCC had roughly nine hundred inmates on the "state side." Plaintiff alleges that during many shifts there were NO guards working at all in the prison. Regularly there were less than TEN guards to monitor 900 inmates. When there were guards there were so few, they could not possibly control all the inmates. The warden and his staff relied on inmates to keep the peace.

**a.** The Leavenworth Detention Center in Kansas was similarly understaffed. A vacancy rate audit done in 2017 found it was 25% filled with guards. This is also run by CORE CIVIC.

**b.** The Trousdale Turner Correctional Center in Tennessee was also found to be dangerously understaffed. This prison is also run by CORE CIVIC.

**c.** A Tennessee Comptroller audit found that prisons run by CORE CIVIC to be dangerously understaffed. A recommendation of the report was that CORE CIVIC be required to show true and accurate staffing numbers as required by the contract. If they did not, they would have to pay the state of Tennessee.

**d.** Staffing has been a constant issue at NEOCC because of the low pay and horrific working conditions.

**e.** In 2022, Defendant CORE CIVIC settled a lawsuit for an undisclosed amount that alleged chronic understaffing at a Tennessee prison.

**18.** NEOCC guards are also bringing in dangerous contraband. On December15, of 2022, a guard plead guilty to federal charges of smuggling in drugs to the inmate. *U.S.A. v Terrigno, 22 CR 640.* On March 25, 2021, another guard plead guilty to bribery charges related to bringing in contraband to NEOCC. *U.S.A v Herring 22 CR 436.* These are only the guards that were indicted and convicted by the federal government. The wholesale smuggling of contraband was rampant by guards at NEOCC. In fact, a guard brought in a gun to the prison and delivered it to the Heartless Felons.

**19.** This environment led the prison staff and administrators to make this unusual agreement with the gang leaders of NEOCC. Also, the Warden, Deputy Warden

and Chief of Security were given bonuses by CORECIVIC if they kept staffing and violence down.

**20.** Plaintiff was ordered by prison staff to fight with other prisoners who had taken property of inmates. From 2017 until he left in 2022. They were to retrieve property and if given any resistance beat the inmates. Inmates that assisted Plaintiff were Travis Addy, Ty Kremling, and Kurtis Williams. All these incidents were on the order of guards or staff working for Northeast Correctional Center. The only time Plaintiff would act was if he was told by an employee of the prison to retrieve property.

**a.** In 2022, inmates broke into the school area and stole several computers. Plaintiff was approached by Chief of Security Cogner and Assistant Investigator Wyman and told they needed it back. Plaintiff received the computers at physical risk and damage to himself. He had to physically fight five rival gang members to retrieve these computers. He was given a Sega Genesis for this behavior.

**b.** Also in 2022, an elderly inmate was in the hospital and property was stolen by two inmates. D Unit Manager Douglass instructed Plaintiff to retrieve these items. Plaintiff and others retrieved the property and one of the inmates who stole it suffered a broken jaw. That inmate's family called complaining. Plaintiff was told to tell that inmate to tell his family to quit calling the prison. Plaintiff was

told by the unit manager that the prison administration was very happy with how things were handled.

c. Again in 2022, Plaintiff was ordered by Unit Manager Douglass to physically assault an inmate who had stolen their lunch. Plaintiff did so and was rewarded. It became clear to Plaintiff that he was going to get killed or severely injured.

**21.** Plaintiff was ordered by prison staff to have people send pictures of state identification to his Jpay email account so that they could be approved as visitors off the books. This occurred from 2019 until he left in 2022. He would then house those identification cards in his cell. This identification includes social security cards and birth certificates. The visitors would be approved tentatively by either case manager Keenan or unit manager Viars. All that information was housed in Plaintiff's cell, at the administration's request, at Northeastern Correctional Center. When he was placed in local control for investigation, the guards allowed other inmates to take these identification pictures. All the identification was stolen when he was put in local control for the investigation in July 2022. It is possible that the private identifying information is being sold and traded within NEOCC. Numerous guards commented to the Plaintiff that he could make money selling that information.

**22.** Plaintiff was ordered by prison staff to run the visiting room. This occurred from 2019 until he left in 2022. There were no guards present during the visits. During visiting times family members and significant others of inmates would bring in contraband. Inmates further would engage in sexual relations in the bathroom

during visits without any guard supervision. In 2019, it was discovered that a drug dealer was directing distribution of his empire from NEOCC with a contraband cell phone. *U.S.A v Loranzao*

**23.** Plaintiff was allowed to enter the female only side of the prison but only did so once and did not have any sexual relations with the female prisoners. The females were terrified of men being loose in their section. All the other gang leaders routinely would enter the female only side of the prison for sexual activity. Plaintiff cannot allege whether these encounters were consensual. Plaintiff does know that a maximum-security federal inmate was allowed to come and go as he pleased into the female section of the prison.

**24.** At some point during his stay, the female prisoners were removed from Northeastern Correctional Center. The federal prisoners being held for Federal criminal and immigration charges have also been removed from Northeastern Correctional Center.

- **a.** At NEOCC, a contract employee was convicted for having sex with an inmate in 2021. *U.S.A v Davis , 22 CR 829*

**25.** Plaintiff oversaw hiring and firing inmates for jobs while at the prison. This occurred from 2019 until he was ridden out to OSP. This was done with the understanding and approval of the administration of Northeastern Ohio Correctional Center. He was also allowed to remove individuals who had been transferred to other prisons for wrongdoing. He did this on several occasions for inmates who worked for him both in the visiting room and as his group of enforcers.

**26.** Plaintiff was responsible for helping new guards and staff understand how things worked at NEOCC. Assistant Warden Blackmon was unaware of the understanding when he came to the prison in 2022. He wrote up Plaintiff and fired him as the porter in the visiting room. Warden Bobby not only made the assistant apologize to Plaintiff, but he made Blackmon serve him a cheeseburger at the staff picnic. In front of all the staff at NEOCC. This was humiliating for Mr. Blackmon.

**27.** Plaintiff was allowed to see the list of individuals who were to be transferred from NEOCC. Regularly he was allowed to take people off of that list. This was condoned and allowed by Defendants Warden, Deputy Warden, Chief of Security and others.

**28.** On June ,2022, a guard brought a gun into the institution by a guard. This guard was, in fact, a member of the Heartless Felons. She was also married to a high-ranking member of the Heartless Felons. A member of the Heartless Felons got the gun and brought it into the cellblock. The individuals were shown on social media brandishing the gun. A number of the Heartless Felons wrote statements regarding this gun after its discovery.

**29.** The administration found out this occurred and ordered Plaintiff to retrieve this weapon from the gang member. Plaintiff refused. This caused trouble between him and the administration.

**30.** In June or July 2022, Inmate Richard Rodriguez was assaulted by several fellow members of the Heartless Felons in the cell block "controlled" by Plaintiff. Plaintiff urged Rodriguez to not make it bad on himself and that he would step in if the Felons got out of hand. Plaintiff stood by while this was occurring. No guards saw

this beating on camera and came to Rodriguez's aid. No staff heard this and came to his aid. An officer viewed the video later and determined Plaintiff was somehow involved. Plaintiff was written up and sent to segregation. Plaintiff was placed into local control on July 11, 2022.

**31.** All five of the high-ranking members came to Plaintiffs cell in Segregation and told him he would be getting out soon. They brough him his Sega Genesis, cell phones and commissary items. The plaintiff was satisfied he would be cleared as he did nothing wrong.

**32.** Plaintiff believes that his brother called the Ohio State Highway Patrol and told them there was a gun and that the prison had ordered him to retrieve it. The administration became irate that someone on the outside had contacted the authorities. The warden, deputy warden and Chief of Security told Plaintiff he could not be trusted and would be "rode out," or sent to another institution.

**33.** Plaintiff was transferred on the order of Warden David Bobby on July 29, 2022.He was sent to the Ohio State Penitentiary in Youngstown, Ohio. This was done without a hearing of any kind.

**34.** Plaintiff was given a RIB hearing once he was at OSP in Lucasville, Ohio.

**35.** In 2022 or early 2023, outside agencies and guards were brought from other prisons were brought to NEOCC to look for contraband. Following an extension search hundreds of cell phones were found. Drugs were found in great quantity. Weapons were found in great quantity.

**36.** Plaintiff understands that several riots have occurred in the prison because the administration is now attempting to gain control. Without the proper number of guards and having allowed the prisoners to control the prison for the past six years.

**FIRST CLAIM**

**DEFENDANTS ENGAGED IN PATTERN OF CORRUPT ACTIVITY WHICH CAUSED INURY TO THE PLAINTIFF**

37. Plaintiff incorporates paragraphs 1-32 in this claim.

38. RICO provides for civil actions . . . by which '[a]ny person injured in his business or property by a RICO violation may seek treble damages and attorney's fees.' *18 U.S.C. § 1964(c).*

39. A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. . . . In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

40. The Supreme Court has imposed a four-year statute of limitations on RICO claims." *Sims v. Ohio Cas. Ins. Co., 151 F. App'x 433, 435 (6th Cir. 2005).*

41. To establish a RICO violation under §§ 1962(c) and 1964(c), Plaintiff must prove that DeMartini engaged in "an enterprise . . . through a pattern . . . of racketeering activity that included at least two racketeering acts" that caused injury to the Town's "business or property." *See Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016) (quotations omitted).* For RICO purposes, a "racketeering act" must constitute a violation of one of the laws described in 18 U.S.C. § 1961(1). *Raney,*

*370 F.3d at 1087*. Those laws include extortion, mail fraud, and wire fraud, among other crimes. *18 U.S.C. § 1961(1)*.

42. Defendant CORECIVIC posted profits of $1.85 **Billion** dollars in 2022. Their mission statement claims they ," provide high quality treatment to those in our care. " Based on news reports and numerous court filings in numerous jurisdictions, they do not provide such care.

43. NEOCC opened in 1997 in Youngstown, Ohio. The original contract to operate this for-profit prison was given to CORE CIVIC. Over this period, CORECIVIC had contracts to house federal inmates, ICE inmates and state prisoners. CORECIVIC lost its ICE contract in 2015 and its US Marshalls contract in 2021. Both contracts were not renewed due to CORECIVIC business model of understaffing to maximize profits. The State of Ohio has renewed the contract with CORECIVIC numerous times.

44. ODRC still maintains a contract with CORECIVIC to operate NEOCC. The reasons for this are baffling. Chronic understaffing and corruption have led to contraband smuggling, medical neglect, physical and sexual violence, and murder. This behavior is condoned by the state actor defendants. This enterprise was set up to maximize profits by chronically understaffing NEOCC and by using prisoners as slaves to carry out the work of guards.

45. The warden, deputy warden, case managers and chief of security have employed, off the books, without pay or benefit, gang members to control the security of the prison. CORECIVIC were able to operate the prison and keep the level of violence acceptable to ODRC. This is a direct violation of 18 USCS §§ 1581–1592]

(*relating to peonage, slavery, and trafficking in persons*). CORECIVIC reduced the prisoners to workers without pay or benefit for their maximization of profit. CORECIVIC used these prisoners so that the reports of violence could stay at a level commiserate with the contract. This is forced labor. Plaintiff had to fight on the direction of prison staff, on an almost daily basis. Forced labor is compulsory labor without the existence or pretext of a debt. It is prohibited by 18 U.S.C 1589. This is the first predicate violation required for RICO.

46. The warden, deputy warden, and chief of security in 2022 directed Plaintiff to receive identification from prospective visitors to the prison. This was done thru the Jpay email system. He would have individuals send identification documents to him. This includes driver's licenses, social security cards and birth certificates. He was directed by the staff to keep copies of all these things in his cell. To inventory it. He did as he was directed by the Warden, Chief Deputy warden and chief of security. When he was sent to local control, all these documents were stolen out of his cell. This is in direct violation of 18 USCS § 1028 (a)(2). *knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority*. This is the second predicate violation required for a RICO civil complaint.

47. Warden, Deputy warden and chief of security and CORE CIVIC chronically understaffed and underpaid guards at the prison. These guards routinely were bringing in drugs to the institution. The institution did nothing to stop the guards from bringing drugs into the institution. At least two of the guards were convicted

of bringing drugs into the institution. This is a direct violation of 18 U.S.C. § 224 (bribery), 18 U.S.C 201 (controlled substances). This is the third predicate violation required for a RICO civil complaint.

48. Warden, deputy warden and chief of security directed by CORECIVIC instructed Plaintiff to retrieve a firearm that was brought into NEOCC. Plaintiff refused as this would result in his being physically injured or killed. These defendants retaliated by orchestrating a fight ticket to get him removed from NEOCC. He now has a fight ticket on his institutional record two years from his parole hearing and is moved far away from family and friends. This is a direct violation of [18 USCS § 1512] (relating to tampering with a witness, victim, or an informant), section 1513 [18 USCS § 1513] (relating to retaliating against a witness, victim, or an informant) This is the fourth predicate violation required for a RICO civil complaint.

49. Plaintiff has been damaged by Defendants actions because as an enforcer for the prison, he must fight whoever the prison tells him to fight. Plaintiff has permanent damage in his hand. He suffers from mental health issues related to being placed into a war zone and instructed to injure and hurt other inmates. The defendants would instruct what few guards that were in the prison to get these gang leaders to enforce the peace. This resulted in numerous injuries to his person.

50. Plaintiff has been damaged also because he was moved to a prison that is far away from Stark County and his family. This move was in retaliation for his refusal to retrieve the firearm that was smuggled into the institution.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims contained in this complaint.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A. Core Civic be required to subject to an audit of all prisons in the Ohio system that they "run."

B. Damages more than seventy-five thousand dollars as determined by a jury.

C. Reasonable attorney's fees

## VERIFICATION OF COMPLAINT

I, Yusuf Brown-Austin declare as follows:

1. I am a party to this action.

2. I have read the foregoing complaint and know of the contents thereof.

3. Based on my own knowledge, the contents of paragraphs 1-38 are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Yusuf Brown-Austin

## NOTARY CERITIFCATION

I hereby swear and affirm that Plaintiff appeared before me, was sworn and declared the above was true and accurate the best of his knowledge and understanding.

07.14.2023

Notary public

NOTARIAL SEAL
STATE OF OHIO

LISA E REUTER
Notary Public
In and for the State of Ohio
My Commission Expires
April 30, 2027

Respectfully submitted,

**S/ Eric J Allen**

ERIC J ALLEN (0073384)
The Law Office of Eric J Allen, LTD
4200 Regent, Suite 200
Columbus, Ohio 43219
Tele No. 614.443.4840
Fax No. 614.573.2924
Email:eric@eallenlaw.com